LOUISVILLE & N. R. CO. et al. v. WRIGHT, Comptroller General.

(District Court, N. D. Georgia.   October 7, 1916.)

TAXATION &wkey;98—PROPERTIES—SITUS.

A Georgia corporation executed a lease of all its property, which required the lessee, in order to guarantee performance, to deposit in such place and manner as the president of the lessor corporation might designate $1,000,000 in bonds, the security, though substitution of securities might be made, to be at all times kept on deposit. The lease was assigned to complainants, two railroad companies, and they operated the demised railroad property. The required bonds were deposited in New York. *Held*, in view of the purpose of the requirement, and despite the fact that complainant corporations operated the demised property under a name similar to that of the lessor, the bonds deposited in New York had no situs in the state of Georgia for taxation, on the theory that they constituted capital invested in the demised property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 196–198, 200; Dec. Dig. &wkey;98.]

In Equity. Bill by the Louisville & Nashville Railroad Company and another against William A. Wright, Comptroller General. Injunction granted as prayed.

See, also, 199 Fed. 454.

Jos. B. Cumming and Cumming & Hull, all of Augusta, Ga., and Alex. C. King, and King & Spalding, all of Atlanta, Ga., for complainants.

Clifford Walker, Atty. Gen., Pierce Bros., of Augusta, Ga., and George Westmoreland, of Atlanta, Ga., for defendant.

NEWMAN, District Judge. This is a bill in equity filed by the Louisville & Nashville Railroad Company, a corporation created, organized, and existing under the laws of the state of Kentucky, and the Atlantic Coast Line Railroad Company, a corporation created, organized, and existing under the laws of the state of South Carolina, against William A. Wright, comptroller general of the state of Georgia, seeking to restrain the said comptroller general from seeking further to collect certain taxes from the two complainant corporations.

In 1881 the Georgia Railroad & Banking Company, a Georgia corporation, executed a lease to William M. Wadley, in which it leased for a term of 99 years all of its property. This lease contained the following provisions:

"In order to guarantee the performance of the agreements and covenants hereinbefore made by the party of the second part, said party of the second part further covenants for himself and assigns to deposit, in such place and such manner as the president of the party of the first part may designate, one million dollars in bonds of the United States or in other bonds of equal value, said deposit to be kept up to the clear market value of one million dollars. Provided, the said party of the second part, and his assigns, shall have the privilege of collecting for his or their own benefit the income of said bonds and of changing the kind of bonds from time to time and substituting for bonds other and different security, provided such other and different securi-

ty be first approved by the party of the first part; also covenants for himself and assigns that his and their legal rights and privileges under this indenture shall be so preserved by him that the deposit of one million dollars as security for the due and faithful performance of the terms and conditions of this indenture shall remain and continue so subject during the entire term of said lease, without impediment or embarrassment growing out of the distribution or want of representation of the estate of the party of the second part, or any of his assigns; and that it is the true meaning of these presents that said deposits of security shall at all times remain as a guaranty for the covenants of this indenture, and liable to any proceeding at law or in equity to enforce the rights of the party of the first part, without let, hindrance or delay on account of the death of the party of the first part, or any of his assigns, testate or intestate, and that the death of the party of the first part, or any of his assigns, testate or intestate, or the failure of any of the legal representatives of his or their estate, shall be no excuse whatever for the performance or nonperformance of any of the covenants or agreements of the party of the second part."

Shortly after the execution of this lease William M. Wadley transferred the same to the Louisville & Nashville Railroad Company, and it in turn, in 1899, transferred a half interest to the Atlantic Coast Line Railroad Company. Thereupon the Atlantic Coast Line Railroad Company and the Louisville & Nashville Railroad Company deposited bonds amounting to $1,075,000 with the Farmers' Loan & Trust Company of New York, a corporation of that state. These bonds were so deposited in compliance with the provision of the contract which has been quoted above; that is, for the purpose of guaranteeing the faithful performance on the part of the lessees of the agreements and covenants made in the contracts.

The comptroller general of the state of Georgia, in November, 1915, demanded of these lessees a return of this property, that is, the $1,075,000, for taxation. Upon their refusal to make such return he assessed the $1,075,000 of bonds for taxation at their face value against complainants, the lessees of the Georgia Railroad & Banking Company with headquarters at Augusta, Ga.

The old Georgia Railroad & Banking Company is now being operated by the lessees using the trade-name of the Georgia Railroad in carrying on the business of said railroad. These railroads, as lessees, have made annual returns to the Railroad Commission of Georgia and to the comptroller general of Georgia, of certain property for taxation in the name of "Georgia Railroad, lessee organization."

The question in the case is whether or not this property, these bonds so placed with the Farmers' Loan & Trust Company of New York, have a situs in Georgia for taxation. Counsel for the comptroller general rely on the case of Scottish Union & Nat. Ins. Co. v. Bowland, 196 U. S. 611, 25 Sup. Ct. 345, 49 L. Ed. 619. What was decided in that case can, I think, be gathered from the first headnote, which is as follows:

"While technically municipal bonds, deposited with the Insurance Commissioner under the laws of Ohio, regulating the right of foreign companies to do business within the state, are investments in bonds, they are also a part of the capital stock of the company invested in Ohio and required to be so invested for the security of domestic policy holders, and for the purposes of

taxation to be considered as part of the capital stock of the company and included within the statutory definition of personal property required to be returned by foreign and domestic corporations for taxation."

I do not consider this case an authority upholding the action of the comptroller general in the present instance, because the case cited deals with securities placed by the insurance company in Ohio for the better securing of the policy holders of the company in that state. The securities were physically in the state of Ohio, and were held to be a part of the capital of the company employed in its business in that state.

The contention here by counsel for the comptroller general is that the bonds deposited with the trust company in New York in compliance with this contract, and for the purpose of securing its performance, are capital invested in Georgia on which the lessees operate in Georgia. This I understand to be their contention, that while the bonds are physically in the state of New York, they are constructively in the state of Georgia, and a part of the capital with which these lessees transact their business. I do not understand this case of the Scottish Union & Nat. Ins. Co. v. Bowland, nor the case subsequently decided by the Supreme Court, Metropolitan Life Ins. Co. v. New Orleans, 205 U. S. 395, 27 Sup. Ct. 499, 51 L. Ed. 853, also cited for the defendant, nor the case of Western Assur. Co. of Toronto v. Halliday, by the Circuit Court of Appeals, Sixth Circuit, 126 Fed. 257, 61 C. C. A. 271, or any of the other cases cited here, to be authority for the position taken that these bonds, physically in New York, and the property, one half of the Louisville & Nashville Railroad Company of Kentucky and the other half of the Atlantic Coast Line Railroad Company of South Carolina, are in the state of Georgia for the purpose of taxation. They were placed in the hands of the Farmers' Loan & Trust Company to be held as security for the faithful performance of their contract with the Georgia Railroad & Banking Company. They are not capital invested in the business carried on by the lessee companies in Georgia, but they are security for their compliance with their contract to carry on the business of the railroad company and to pay the rental. It seems to me that the position in which these bonds stand, deposited by the two complainant companies as security for their contract, is entirely different from that of the securities and obligations in the three cases to which I have referred. The situs of securities like these, for the purpose of taxation, follows, as a general rule, the residents of the owner, and it requires an entirely different status from that which exists here to change the rule and make them taxable elsewhere.

It is contended for the comptroller general here that the effect of the transaction between the two lessee railroad companies is to create a partnership between the two, doing business in Georgia under the name of the Georgia Railroad. On the other hand, it is contended that they are merely tenants in common of the property of the Georgia Railroad & Banking Company. I do not think it is very material here which contention is correct. It is sufficient to say that, whether it is a partnership, or whether they have become, by the con-

tract, tenants in common, the bonds deposited with the trust company in New York to secure, on their part, the faithful performance of the lease do not become a part of the capital with which they transact their business in Georgia. They were a prerequisite to the undertaking to transact business here, and not a part of the capital which entered into the business, or a part of the capital with which it has been carried on.

The use by the lessee companies of the name "Georgia Railroad," in the operation of the railroad in Georgia is merely the adoption of this as a trade-name, and in no way affects, it seems to me, the liability of these securities in New York for taxation here. Neither does the return under the name of the "Georgia Railroad" to the Railroad Commission of Georgia, or the return to the comptroller general of money unquestionably liable for taxation, affect the question here.

My conclusion is that the bonds of these two companies, placed as they have been, are not subject to taxation in Georgia; consequently the complainants are entitled to an injunction, and the same will be granted as prayed.